**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
MARNIE R. HARRIS,                   )
                                    )
            Plaintiff,              )
                                    )      Civil Action
v.                                  )      No. 18-11359-PBS
                                    )
ANDREW M. SAUL, Commissioner of     )
the Social Security Administration, )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM AND ORDER**

July 30, 2019

Saris, C.J.

**INTRODUCTION**

Plaintiff Marnie R. Harris brings this pro se action under 42 U.S.C. § 405(g) for judicial review of a final decision denying her application for Supplemental Security Income benefits ("SSI"). Plaintiff suffers from cervical degenerative disc disease, obesity, diabetes, bilateral knee osteoarthritis, hammertoe deformities, and right shoulder tendinopathy with a partial rotator cuff tear. She contends that the Administrative Law Judge ("ALJ") did not properly consider her pain in assessing her ability to work.

1

For the reasons set forth below, the Court **DENIES** Plaintiff's motion to reverse (Docket No. 20) and **ALLOWS** the Commissioner's motion to affirm (Docket No. 22).

## FACTUAL BACKGROUND

The following facts are taken from the administrative record. Plaintiff is a 55-year-old woman. She completed four years of college and, in the fifteen years preceding her application, worked as a secretary, saleswoman, liaison, and tax preparer. She stopped working in 2011.

### I. Medical History

An examination of Plaintiff on July 24, 2013 showed that she suffered from obesity, back and foot pain, and diabetes but had full overhead reach, good range of motion of the neck, and the ability to grasp. She has taken Flexeril for many years for her pain.[1]

Plaintiff underwent physical therapy to address her upper back pain at Brigham and Women's Faulkner Hospital in 2014. The physical therapy improved the strength of her neck muscles. By the last session on August 6, 2014, Plaintiff reported that she could clean laundry, cook, drive, and sleep and that she did not feel functionally limited by her neck pain.

---

[1] Plaintiff has now been prescribed Tizanidine.

On December 2, 2014, Plaintiff went to the emergency room because of shoulder pain. After performing a clinical exam and x-rays, the attending physician diagnosed Plaintiff with a rotator cuff injury. She recommended that Plaintiff rest, take ibuprofen as needed, apply ice, and avoid physical activity.

A week later, Dr. Edward Phillips, a physiatrist, examined Plaintiff for muscles spasms in her upper back. He noted several additional health problems, including lower back pain and pain in her right foot caused by two hammertoes. Despite her pain, Plaintiff could grasp, had full range of motion of her neck, and had full overhead reach. Dr. Phillips and Plaintiff discussed doing more physical therapy, getting a steroid injection for her right shoulder, and taking either Diclofenac or Aleve.

On October 5, 2015, Plaintiff was examined by Dr. David Cahan, a state medical consultant. She told Dr. Cahan that, while her pain prevented her from walking more than two blocks and climbing more than one flight of stairs, she could sit adequately, do light cleaning, and stand for only a few minutes as long as she leaned to her left side. She complained about muscle spasms and pain at the base of her left neck and in her shoulders but noted that her pain that was less severe than it had been in the past. Dr. Cahan determined that Plaintiff had good range of motion of the neck despite some muscle tightness and that she could "ambulate[] slowly with a modest limp" and

without an assistive device. He also noted that her right shoulder's posterior rotation was marginally limited and that she could not squat.

The same day, Plaintiff saw Dr. Susan Hata, her primary care physician ("PCP"). Dr. Hata noted that Plaintiff suffered from obesity, diabetes, lower back pain, and foot pain. Plaintiff's neck was "supple," and her lymph nodes did not suffer from lymphadenopathy. Dr. Hata examined Plaintiff again on January 15, 2016 and noted that she moved all extremities well and had no pain associated with external and internal rotations of the right shoulder or joints. Dr. Hata instructed Plaintiff to take baby aspirin daily.

On March 8, 2016, imaging of Plaintiff's right shoulder showed extensive tendinopathy of the rotator cuff, as well as partial tearing and severe degenerative changes at the acromioclavicular joint. An x-ray of Plaintiff's right shoulder two months later showed mild degenerative changes of the acromioclavicular joint and a well-maintained glenohumeral joint.

On July 8, 2016, Plaintiff saw Dr. Joseph Hanak, a physiatrist, for complaints relating to neck, knee, and shoulder pain. Dr. Hanak noted that she was "cavalier," put forth minimal effort when he performed manual muscle testing, and was not complying with her medication regimen. Plaintiff also had

4

"decreased abduction of the right shoulder due to discomfort, but when coached had full range of motion." Dr. Hanak rated her right-side external rotation weakness as "slight" and a "5-/5" and her other upper body muscles as "5/5." Two weeks later, Plaintiff underwent radiological examinations that revealed degenerative changes and small joint effusions in her knees and a normal alignment of her cervical spine with multilevel degenerative changes.

On December 5, 2016, Dr. Kevin Riemer, a podiatrist, examined Plaintiff's feet. Plaintiff reported mild pain but appeared well and in no acute distress. Dr. Riemer rated her muscle strength as 5/5. They discussed the possibility of hammertoe surgery, which Plaintiff declined.

On January 10, 2017, Dr. Nancy Shadick, a rheumatologist, examined Plaintiff for pain in her left knee due to her osteoarthritis. Plaintiff also complained about her ankles and stated that physical therapy had not helped her. Plaintiff denied fatigue or lower back, chest, or abdominal pain. After examining Plaintiff, Dr. Shadick determined that Plaintiff was a "well-nourished adult in no apparent distress." Dr. Shadick did not identify any deformity, swelling, tenderness, or limited range of motion in the shoulders, wrists, hands, fingers, and knees.

## II. Dr. Hata's Disability Opinion

Dr. Hata completed two forms with her opinion on Plaintiff's disability. In the first report, Dr. Hata stated that she believed Plaintiff's pain did not prevent her from working. Plaintiff made an appointment with Dr. Hata to discuss this opinion; during the appointment, Plaintiff was tearful, stated she had no income, and described her ongoing neck pain, back pain, spasms, and bilateral knee pain. Dr. Hata subsequently filled out a second form in which she opined that Plaintiff's disability prevented her from working.

## III. State Agency Reviewing Physicians' Opinions

On October 12, 2015, Dr. Abraham Colb reviewed Plaintiff's medical records. While he noted that Plaintiff's health limited her to occasionally pushing, pulling, climbing, balancing, stooping, kneeling, crouching, and crawling, he opined that she had the RFC to perform her past relevant work and was therefore not disabled. Dr. John Jao reviewed the medical records again on February 12, 2016 and reached the same conclusion.

On November 16, 2016, Dr. Robert Vokil completed a Physical RFC Worksheet. He determined that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk at least two hours in a normal workday and sit for six hours, occasionally climb, stoop, and kneel, always maintain balance, and occasionally reach overhead with

her right arm and always reach overheard with her left arm. He also opined that she could never crouch or crawl and that her limitations would continue for at least twelve months.

IV. **Testimony at Hearing**

At a hearing before the ALJ on March 2, 2017, Plaintiff testified that she could not cook more than three days a week because of back and right-shoulder pain. She stated that she had problems driving, standing for longer than five minutes, maintaining balance, sitting up straight in a chair, bending, and holding a phone with either hand. She explained that she lays down and naps throughout the day because of her back pain and the drowsiness that the Flexeril causes. In addition, she claimed she cannot type because of arthritis in a finger, pain in her shoulder blades, and the inability to sit straight. Finally, she noted that, while she cannot do laundry, she can clean and go to the store.

Dr. James Soldner, a vocational expert, also testified at the hearing. He identified her past relevant work as retail store manager, school secretary, and case manager. He opined that an individual who could occasionally climb, balance, stoop, kneel, crouch, or crawl but never climb a ladder could work as school secretary and case manager but not a retail store manager. He also opined that the same individual who was limited

7

to unskilled work because of pain could not work as a school secretary or a case manager either.

## LEGAL STANDARD

Under the Social Security Act, a claimant seeking SSI must prove that she is disabled, i.e., "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to assess a claim for disability benefits. See 20 C.F.R. § 416.920(a)(4); Purdy v. Berryhill, 887 F.3d 7, 9-10 (1st Cir. 2018). The evaluation ends at any step if the Commissioner finds that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The steps are as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the claimant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" [RFC] is such that he or she can still perform past relevant work, the application is denied; and 5) if the applicant, given his or her [RFC], education, work experience, and age, is unable to do any other work, the application is granted.

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001)). A claimant's RFC is "the most [the claimant]

can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Past relevant work encompasses "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." Id. § 416.960(b)(1). If a claimant cannot still perform her past relevant work, the ALJ will assess whether there is any other work the claimant "can adjust to" that "exist[s] in significant numbers in the national economy." Id. § 416.960(c)(1).

The claimant bears the burden of proof for steps one through four. Purdy, 887 F.3d at 9. If the analysis proceeds to step five, the Government bears the burden of proof to present evidence of specific jobs the claimant can perform. Id. at 10.

## AGENCY DECISION

On June 17, 2015, Plaintiff filed an application for SSI alleging disability beginning on September 29, 2013. The claim was denied on October 19, 2015 and upon reconsideration on February 12, 2016. On April 11, 2016, Plaintiff filed a written request for a hearing, which was held on March 2, 2017.

On May 31, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 17, 2015, the application date. At step two, the ALJ concluded that Plaintiff had the following severe impairments:

cervical degenerative disc disease, obesity, diabetes, bilateral knee osteoarthritis, hammertoe deformities, and right shoulder tendinopathy with a partial rotator cuff tear. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ then determined Plaintiff's RFC:

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except that [she]: can lift ten pounds occasionally and less than ten pounds frequently; can stand and/or walk for two hours total over an eight-hour day; can sit (with normal breaks) for six hours total in eight-hour [sic] workday; can frequently balance, kneel, stoop, crouch, and crawl; can never climb ladders; can occasional [sic] push and pull with both upper and lower extremities; and must avoid concentrated exposure to hazards.

In reaching this conclusion, the ALJ noted inconsistencies between Plaintiff's testimony about her pain and the evidence in her medical record. He also determined that Plaintiff's "substantial activities of daily living [were] inconsistent with her allegation of total disability." He gave great weight to the opinions of Dr. Colb and Dr. Jao, partial weight to the opinion of Dr. Vokil, and little weight to the form completed by Dr. Hata. Based on this RFC, the ALJ determined at step four that Plaintiff could perform her past relevant work as a school secretary and case manager and was therefore not disabled.

**STANDARD OF REVIEW**

A district court reviews an ALJ's decision "to determine 'whether the final decision is supported by substantial evidence and whether the correct legal standard was used.'" Coskery v. Berryhill, 892 F.3d 1, 3 (1st Cir. 2018) (quoting Seavey, 276 F.3d at 9). The substantial evidence standard is "not high" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In applying this standard, a court "must bear in mind that it is the province of the ALJ . . . to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence." Johnson v. Colvin, 204 F. Supp. 3d 396, 407 (D. Mass. 2016) (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)).

In reviewing for legal error, "[f]ailure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996). Where application of the correct legal standard could lead to a different conclusion, a court must remand to the agency. See Da Rosa v. Sec'y of Health

& Human Serv., 803 F.2d 24, 26 (1st Cir. 1986). However, remand is not necessary if it "will amount to no more than an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).

**DISCUSSION**

I. **Waiver of Factual and Legal Errors**

The Commissioner argues that Plaintiff has waived any claim of legal or factual error because her barebones motion to reverse does not identify specific errors in the ALJ's decision or provide citations to the record. However, courts construe pro se pleadings liberally, see Donovan v. Maine, 276 F.3d 87, 94 (1st Cir. 2002), and Plaintiff's motion clearly attempts to challenge the ALJ's determination of the severity of her physical condition. The Court therefore addresses her arguments on the merits.

II. **Evidence of Pain**

Plaintiff's core argument is that the ALJ failed to consider all the evidence of her shoulder, back, and neck pain in determining her RFC. In particular, she challenges the ALJ's negative credibility determination of her subjective complaints of pain.

In evaluating subjective complaints of pain, the ALJ must first determine whether there is a "clinically determinable medical impairment that can reasonably be expected to produce

12

the pain alleged." Avery v. Sec'y of Health & Human Serv., 797 F.2d 19, 21 (1st Cir. 1986). When evaluating the clinical evidence, the ALJ must also consider "other evidence including statements of the claimant or [her] doctor, consistent with the medical findings." Id. However, "[t]his does not mean that any statements of subjective pain go into the weighing." Id. The ALJ, in resolving conflicts of evidence, may determine that the claimant's subjective complaints concerning his condition "are not consistent with objective medical findings of record." Evangelista v. Sec'y of Health & Human Serv., 826 F.2d 136, 141 (1st Cir. 1987).

With this evidence in hand, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [he] can determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 416.929(c). The regulations recognize that a person's symptoms may be more severe than the objective medical evidence suggests. See id. § 416.929(c)(3). Therefore, the regulations provide six nonexclusive factors (known as the Avery factors) to be considered when a claimant alleges pain:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g. movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side effects of any pain medication; 4. Treatment, other than medication, for

relief of pain; 5. Functional restrictions; and 6. The
claimant's daily activities.

Avery, 797 F.2d at 29; accord 20 C.F.R. § 416.929(c)(3)(i)-(vi).

The ALJ's credibility determination "is entitled to deference." Frustaglia v. Sec'y of Health & Human Serv., 829 F.2d 192, 195 (1st Cir. 1987). However, an ALJ who does not believe a claimant's testimony regarding her pain "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." Da Rosa, 803 F.2d at 26. Although an ALJ should thoroughly question the claimant about her pain, he need not explicitly outline every single Avery factor in making a credibility determination. See Rand v. Barnhart, 357 F. Supp. 2d 361, 368 (D. Mass. 2005).

The ALJ and Plaintiff's attorney elicited testimony from her at the hearing about most, if not all, of the Avery factors. For example, the ALJ asked Plaintiff to describe her pain, the location of the pain, and her ability to perform tasks when she experienced pain. The ALJ also questioned her about her daily activities. Plaintiff testified about the pain medication she takes. Accordingly, the ALJ had before him the necessary evidence to make a determination of how Plaintiff's pain affects her ability to work. In her motion and reply brief, Plaintiff raises subjective complaints about her pain but does not point to any objective evidence the ALJ failed to consider.

14

In reaching a conclusion about Plaintiff's RFC and ability to work, the ALJ considered all the conditions and symptoms she argues render her disabled, including muscle spasms, hammertoe, and knee and shoulder pain. He walked through each type of pain Plaintiff alleged, noting the inconsistencies between her testimony and the objective medical evidence. In particular, while her doctors consistently reported that she endured pain in her neck, knee, shoulder, toe, and hand, none indicated that the pain was as severe as she testified. Her testimony was also inconsistent with the description of her functioning she gave to the Social Security Administration in September 2015. Finally, he found her daily activities -- preparing meals, shopping for groceries, managing financial accounts and bills, and housework -- inconsistent with a debilitating level of pain. See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("[E]vidence of daily activities can be used to support a negative credibility finding."). Based on these specific reasons for his disbelief of Plaintiff's subjective testimony and the substantial evidence in the medical records and testimony to support his conclusion, the ALJ did not err in determining that Plaintiff's pain did not prevent her from working.[2]

---

[2] ` Plaintiff also criticizes the ALJ for not considering her weight and age. As for her weight, the ALJ stated in his opinion that he considered Plaintiff's obesity both individually and in combination with her other impairments, and Plaintiff does not

## III. Weight Afforded to Dr. Hata's Opinion

Construed liberally, Plaintiff's motion to reverse also challenges the ALJ's decision to give little weight to the opinion of Dr. Hata, Plaintiff's PCP, in determining Plaintiff's RFC. In her second report, Dr. Hata opined that the severity of Plaintiff's medical conditions rendered her disabled, a conclusion the ALJ rejected.

Under the applicable regulations, a "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 416.902(i). An "acceptable medical source" includes a "licensed physician." Id. § 416.902(a)(1). A "treating source" is an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Id. § 416.927(a)(2). Dr. Hata qualifies as a treating source because she was Plaintiff's PCP and evaluated Plaintiff on several occasions throughout 2016.

The ALJ must give "[c]ontrolling weight . . . to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion is 'well-supported by medically

---

explain why he should have reached a different conclusion. And once he found that Plaintiff had the RFC to do her past relevant work, the regulations forbid him from considering her age. See 20 C.F.R. § 416.960(b)(3).

16

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the record."[3] Johnson, 204 F. Supp. 3d at 409 (quoting 20 C.F.R. § 416.927(c)(2)). Even if not given controlling weight, a treating source's medical opinion generally receives more weight than opinions from other medical sources. 20 C.F.R. § 416.927(c)(2); Purdy, 887 F.3d at 13.

However, a number of factors determine the appropriate weight to give to the opinions of treating and other medical sources. 20 C.F.R. § 416.927(c). For all sources, the ALJ must consider whether the source examined the claimant, the support the source provides for her opinion, the consistency of the opinion with the record as a whole, and the specialty of the source. Id. For a treating source, the length, nature, and extent of the treatment relationship and frequency of examination are also relevant considerations. Id. An ALJ need not expressly address each factor identified by the regulations but must provide "good reasons" for the weight assigned to the opinion of a treating source. Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass. 2015) (quoting 20 C.F.R. § 416.927(c)(2)).

---

[3] 20 C.F.R. § 416.920c contains new rules regarding the weight given to treating sources that apply to claims filed on March 27, 2017 or later. See Purdy, 887 F.3d at 13 n.8. Because Plaintiff filed her claim on June 17, 2015, the old rules govern this appeal.

The ALJ did not err in giving little weight to Dr. Hata's second opinion. Dr. Hata opined that Plaintiff was disabled only after initially determining that she was not. This change of heart came when Plaintiff, in tears, described her neck and back pain and told Dr. Hata she had no income. Yet Dr. Hata provided no new medical information to justify her change of opinion. Dr. Hata's second opinion was also inconsistent with Plaintiff's medical records. For example, while Dr. Hata said that Plaintiff suffered from disabling shoulder pain in September 2016, Dr. Hanak's medical notes dated July 8, 2016 noted that Plaintiff had "full range of motion" of her right shoulder and a "5-/5" slight rotation weakness on her right side. Similarly, Dr. Shadick observed in January 2017 that Plaintiff was in no apparent distress and did not suffer from a deformity, swelling, tenderness, or limited range of motion in her shoulders, wrists, hands, fingers, and knees.

The ALJ's recognition of these inconsistencies provided good reason for giving little weight to Dr. Hata's disability opinion. The consistency between the objective medical evidence and the opinions of Dr. Colb and Dr. Jao, the state agency nonexamining physicians, justified the ALJ's decision to give their opinions great weight. The ALJ therefore did not err in his weighing of the medical opinions.

## ORDER

For the reasons stated above, Plaintiff's motion to reverse is **DENIED** (Docket No. 20) and the Commissioner's motion to affirm (Docket No. 22) is **ALLOWED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge